IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 25-cv-00440-PAB

TIMOTHY HARRON,

    Applicant,

v.

WARDEN, FLORENCE PRISON CAMP,

    Respondent.

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

    Applicant Timothy Harron ("Applicant" or "Mr. Harron") has filed a *pro se* Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Application"). Docket No. 4. Mr. Harron claims that Respondent, the warden of the FCI Florence, has failed to properly calculate time credits to which he is entitled under the First Step Act ("FSA"). After reviewing the record before the Court, the Court concludes that the Application should be denied and the case dismissed with prejudice.

**I.    BACKGROUND**

    Mr. Harron is a prisoner in the custody of the Federal Bureau of Prisons ("BOP"). According to BOP records attached to the Response to Order to Show Cause, on September 3, 2021, the United States District Court for the Eastern District of North Carolina sentenced Mr. Harron to 120 months in prison. Docket No. 21-1 at 11-12. Following his conviction, Mr. Harron was transported back to "the Bladen County Jail in

North Carolina where he had been housed since August 21, 2020." *Id.* at 12. Mr. Harron "remained at the Bladen County Jail until October 19, 2021," at which point he was "transferred to the Tallahatchie County Correctional Facility in Mississippi where he remained until January 11, 2022." *Id.* Mr. Harron "was then transferred to the Cimarron Correctional Facility in Oklahoma where he remained until January 19, 2022." *Id.* BOP records reflect that, during this time, Mr. Harron "was unable to participate in FSA programming" as no applicable programming is offered by non-BOP facilities. *Id.*

On January 19, 2022, Mr. Harron arrived at MDC Brooklyn in Brooklyn, New York, a short-term BOP facility with limited FSA programming, and on February 10, 2022, Mr. Harron was transferred to his designated facility, FMC Devens in Devens, Massachusetts. *Id.* According to the BOP, on February 10, 2022, Mr. Harron began earning FSA credits. *Id.* at 13. On January 18, 2023, the BOP completed Mr. Harron's individual needs assessment and initial classification, identifying appropriate programming for his criminogenic needs. *Id.* On March 20, 2024, Mr. Harron was transferred to the FCI Florence, his current place of confinement. *Id.* BOP records reflect that, "[a]s of June 9, 2025, [Mr. Harron] has accrued 1199 program days which equates to 365 days of time credits toward release and 190 days of time credits towards prerelease custody or supervised release." *Id.* Accordingly, the relevant time period at issue in this case is September 3, 2021 (Mr. Harron's sentencing date) until February 10, 2022 (the date Mr. Harron arrived at his designated BOP facility).

In the pending habeas Application, Mr. Harron contends that he began serving his federal sentence on September 3, 2021 and started earning FSA time credits from that date. Thus, he alleges that he has earned time credits under the FSA beginning on September 3, 2021 and continuing until February 10 based on "good behavior," a lack of "disciplinary infractions," and not "refus[ing] to participate in or turn[ing] down any programs." Docket No. 4 at 5. As relief, Mr. Harron seeks an order directing the BOP to calculate and credit him with the FSA time credits earned during the relevant time period (from September 3, 2021 through February 10, 2022). *Id.* at 7.

Respondent filed a Response to Order to Show Cause on July 2, 2025. Docket No. 21. In the response, Respondent argues Mr. Harron did not participate in any evidence-based recidivism reduction ("EBRR") programs or productive activities ("PAs") during the relevant time period; thus, his Application should be denied. Mr. Harron did not file a reply to the Respondent's Response to Order to Show Cause despite given an opportunity to do so. For the reasons discussed below, the Application will be denied.

## II.   LEGAL STANDARDS

The Court must construe the Application and other papers filed by Mr. Harron liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520 21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110.

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional

function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997).  Habeas corpus relief is warranted only if Mr. Harron "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  Mr. Harron bears the burden to demonstrate he is entitled to relief.  *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) (noting that "the burden of proof under § 2241 is on the prisoner"); *see also Gayton v. Romero*, 503 F. App'x 562, 564 (10th Cir. 2012) (denying certificate of appealability because petitioner failed to meet his burden of proof regarding sentence calculation).

### III.    FIRST STEP ACT CLAIM

As noted above, Mr. Harron's claim relates to time credits under the FSA.  The FSA provides in relevant part that an eligible prisoner "who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits" that "shall be applied toward time in prerelease custody or supervised release."  18 U.S.C. § 3632(d)(4)(A), (C).  To administer time credits under the FSA, the BOP must determine each inmate's risk of recidivism and categorize the risk as minimum, low, medium, or high; assess and determine each inmate's risk of violent or serious misconduct; determine the type and amount of EBRR programming that is appropriate for each inmate; periodically reassess each inmate's risk of recidivism and reassign the inmate to appropriate EBRR programs and PAs based on the reassessment; determine when to provide incentives and rewards for successful

participation in EBRR programs and PAs; and determine when the inmate is ready for transfer to pre-release custody or supervised release.  *See* 18 U.S.C. § 3632(a)(1) - (7).

An eligible inmate "shall earn 10 days of time credits for every 30 days of successful participation in [EBBR] programming or [PAs]."  18 U.S.C. § 3632(d)(4)(A)(i). An inmate "shall earn an additional 5 days of time credits for every 30 days of successful participation in [EBRR] programming or [PAs]" if the BOP determines the inmate is "at a minimum or low risk for recidivating" and "has not increased their risk of recidivism" over "2 consecutive assessments."  18 U.S.C. § 3632(d)(4)(A)(ii).

The FSA does not itself define what is meant by "successful participation" in qualified programming.  The BOP has adopted a regulation providing that "successful participation" requires a determination by BOP staff that an eligible inmate "has participated" in the recommended EBRR programs or PAs "and has complied with the requirements of each particular EBRR Program or PA."  28 C.F.R. § 523.41(c)(2).  The regulations further offer a non-exclusive list of five circumstances where an inmate is "generally" not considered to be "successfully participating."  *See* 28 C.F.R. § 523.41(c)(4).  An inmate is not considered to be "successfully participating" in the following situations: (i) "[p]lacement in a Special Housing Unit;" (ii) "[d]esignation status outside the institution (e.g., for medical placement in a hospital or outside institution, an escorted trip, a furlough, etc.);" (iii) "[t]emporary transfer to the custody of another Federal or non-Federal government agency (e.g., on state or Federal writ, transfer to state custody for service of sentence, etc.);" (iv) "[p]lacement in mental

5

health/psychiatric holds;" or (v) "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment)." *Id.* §§ 523.41(c)(4)(i) - (v).

Here, the record before the Court reflects that following Mr. Harron's sentencing on September 3, 2021 and until his arrival at his designated facility, FMC Devens, on February 10, 2022, Mr. Harron did not participate in any qualifying EBRR programming or PAs. Mr. Harron has provided no evidence concerning the alleged programs or productive activities for which he seeks FSA credits. Rather, Mr. Harron provides only vague and conclusory allegations that he maintained "good behavior" and was "ready, willing, and able to take the BOP assessment and participate" in available EBRR programs and PAs. Docket No. 4 at 5. Respondent has submitted evidence, however, that it has no record that Mr. Harron participated in approved EBRR programming or PAs prior to February 10, 2022. Further, Mr. Harron has not provided any details or evidence from which any calculation of credit could be made, even if such activities had been later approved for credit. Accordingly, Mr. Harron has failed to show that he has been wrongfully denied FSA credit for successful completion of approved EBRR programming or PAs from September 3, 2021 until February 10, 2022. *See Harris v. Warden*, No. 25-3006-JWL, 2025 WL 1067634, at *3 (D. Kan. Apr. 9, 2025) (concluding the petitioner failed to demonstrate he was wrongfully denied FSA time credits, in part, because the "petitioner has provided no evidence and has given very little information concerning the alleged productive activities for which he seeks FSA credits"); *Stevens v.*

*Jacquez*, No. 3:23-cv-01482-AA, 2024 WL 3200546, at *5 (D. Or. June 25, 2024) (relying in part on the prisoner's failure to present evidence he had successfully participated in qualifying programs or activities during the relevant time to deny habeas relief); *Smith v. Stover*, No. 3:23-cv-01645 (JAM), 2024 WL 3279014, at *2 (D. Conn. June 20, 2024) (declining to decide whether the FSA allows credit for programming prior to the prisoner's arrival at her designated facility because the prisoner presented no evidence she took part in such programming). Accordingly, there is no indication in the record before the Court that Mr. Harron successfully participated in any EBRR or PAs during the relevant time period.

### IV.   CONCLUSION

In summary, the Court finds that Mr. Harron is not entitled to relief and the Application will be denied. Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, Docket No. 4, is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

DATED November 10, 2025.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge